**STATE of Missouri, Respondent,**

v.

**Horace Gregory COLEMAN, Appellant.**

**No. 50720.**

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 24, 1987.

Dave Hemingway, St. Louis, for appellant.

William L. Webster, Atty. Gen., Lee A. Bonine, Asst. Atty. Gen., Jefferson City, for respondent.

SATZ, Presiding Judge.

Defendant Horace Gregory Coleman was convicted by a jury of two counts of robbery and two counts of armed criminal action. He was sentenced to 15 years imprisonment on each count. The sentences were to be served concurrently. Defendant appeals. We reverse and remand.

At trial, defendant challenged for cause a prospective juror, Catherine Peach. Mrs. Peach is the mother of the Circuit Attorney of the City of St. Louis, George Peach. Defendant's motion to strike Mrs. Peach was denied. Defendant then used a peremptory challenge to strike her. On ap-

peal, defendant contends the denial of his motion to strike was prejudicial error. We agree.

The trial court is granted broad discretion to decide a juror's qualifications, and its decision will not be reversed unless that discretion is abused. *State v. Williams*, 643 S.W.2d 832, 833 (Mo.App.1982); *State v. Morris*, 680 S.W.2d 315, 319 (Mo.App. 1984). Nonetheless, a defendant is entitled to a full panel of qualified jurors before he makes his peremptory challenges, *State v. Lovell*, 506 S.W.2d 441, 443 (Mo. banc 1974), and the denial of a legitimate request to strike for cause is an abuse of discretion and, thus, is reversible error. *State v. Hopkins*, 687 S.W.2d 188, 190 (Mo. banc 1985); *State v. Youngblood*, 648 S.W.2d 182, 185 (Mo.App.1983).

■■■ A prospective juror is not the judge of his own qualifications. *State v. White*, 326 Mo. 1000, 34 S.W.2d 79, 81 (1930). The trial court must carefully consider the responses of prospective jurors and make an independent evaluation of the juror's qualifications. *State v. Lovell, supra*, 506 S.W.2d at 444. Narrow appellate review is predicated on this responsibility of the trial court. *State v. Ealy*, 624 S.W.2d 490, 493 (Mo.App.1981). Thus, the absence of an independent examination by the trial judge requires a more searching appellate review of a challenged juror's qualifications. *Id.*

We have set out the voir dire examination of Mrs. Peach in the Appendix. She was questioned briefly by the "prosecutor", Mr. Warzycki,[1] then questioned extensively by defense counsel, Ms. Shubik, followed by Mr. Warzycki's further questioning.

Mrs. Peach's first response to the prosecutor was the bare assertion she could be a fair and impartial juror. She then told defense counsel she "thought" she could be impartial, but she would be uncomfortable and her discomfort would probably affect her decision. Also, on three separate occasions, she said she could not be a fair and

impartial juror. However, in responding to the further questioning by the prosecutor, Mrs. Peach denied she had previously said she could not be fair and impartial. She believed she only said she would be uncomfortable. She then said she could return a verdict and "face" George Peach, her son, with her decision even if it made her uncomfortable.

■■ Apparently, because of the pressures at trial, counsels' questions on voir dire were neither lucid nor succinct. We take the trial record, however, as we find it. Viewing the voir dire in its entirety, it is certainly not clear Mrs. Peach could be an impartial juror. She gave both inconsistent and equivocal answers, and she acknowledged her discomfort with the situation throughout the voir dire. Moreover, the trial court did not conduct an independent examination of Mrs. Peach to clarify her answers. The trial court did state being "uncomfortable is no reason" to strike a juror. This is true, however, only if the juror's discomfort does not affect her ability to make an impartial decision. In isolation, Mrs. Peach's level of discomfort might appear measurable and, thus, meaningful, but it loses all probative weight and, thus, real meaning when considered in the context of her previous repeated answers that she could not be fair and impartial.

This voir dire could serve as a model for the kind of voir dire which causes our Supreme Court concern and consternation. The Court has admonished the trial courts to be extra prudent and to err on the side of caution in determining whether a prospective juror should be stricken for cause. *See, e.g. State v. Hopkins*, 687 S.W.2d 188, 190 (Mo. banc 1985), and concurring opinion of Blackmar, J. at 191; *State v. Johnson*, 722 S.W.2d 62 (Mo.1986), Welliver, J. dissenting. In short, on the present record, Mrs. Peach should have been stricken for cause.

■■ The legislature has also expressed concern with the issue of impartial jurors

---

1. Mr. Warzycki's correct title is "assistant circuit attorney". We use the title "prosecutor" for convenience only.

created by the specific facts here. Section 546.120 RSMo. 1978 prohibits "any person of kin to the prosecutor" from serving as a juror in the trial of a charge initiated by "indictment or information". Neither party cited this statute to the trial court, and it was not discussed in their briefs on appeal. We decided to consider the possible relevancy of the statute under the doctrine of plain error. Rule 30.20. On our own motion, we noted the existence of the statute and requested briefs on its possible relevancy to the issue here. *Id.* Having read the briefs and completed our own research, we find the statute to be prophylactic and, thus, a violation of it, without more, would not compel the inference that actual prejudice and, in turn, plain error occurred. Consequently, we need not and do not determine whether a violation of § 546.120 occurred.

Judgment reversed and remanded.

CRIST and KELLY, JJ., concur.

### APPENDIX

MR. WARZYCKI: ... And in the first row over here. Okay. And you're Mr. Peach's mother?

JUROR PEACH: Right.

MR. WARZYCKI: Do you feel that you could be a fair and impartial juror in this case?

JUROR PEACH: Yes, I do.

MR. WARZYCKI: Thank you, ma'am. (tr. 17)

\* \* \* \* \* \*

MS. SHUBIK: ... Mrs. Peach, I realize that you are obviously closely related to Mr. Peach, who is Mr. Warzycki's boss. You realize that if you sit on this jury, you're probably going to end up telling your son what happened. Would that be fair to say?

JUROR PEACH: Probably.

MS. SHUBIK: I mean, he's definitely going to find out since Mr. Warzycki works for him and Mr. Peach keeps track of those kind of things. Do you talk to your son about what he does?

JUROR PEACH: Sometimes.

MS. SHUBIK: I mean, I know that I talk with my mother about what I do. I'm pretty sure that's true of most people.

My big concern, Miss Peach, is that although you would try to be a fair juror, that the fact that Mr. Peach, Mr. Warzycki's boss, is your son and some of those conversations might have colored your view a little bit, that it might be unable for you to sort of separate that out from what you hear or what you do in this trial.

Are you pretty sure you could, or what do you really feel about that?

JUROR PEACH: I think I could be impartial.

MS. SHUBIK: Okay. In spite of the fact that you realize you're probably going to have to talk to George about this case afterwards. I mean, I think that—I'm just really concerned that you might feel uncomfortable going back to Mr. Peach, to your son, and saying, "Well, Joe Warzycki did a great job, but I just didn't think he was guilty." I mean, I think that could kind of put you in a bind. And since this is the voir dire process, it is as much for you, the citizen, as my client and myself in making sure you would feel comfortable.

JUROR PEACH: Well, I probably would be uncomfortable.

MS. SHUBIK: You do think you would be uncomfortable?

JUROR PEACH: Yes.

MS. SHUBIK: Well, that's exactly what we want to prevent here, and that's why we ask these questions on voir dire. If it would make you feel uncomfortable to vote that way, then that probably would affect your decision in this case, wouldn't it?

JUROR PEACH: Probably.

MS. SHUBIK: So even though you are trying to be fair and impartial, you might not be able to because you feel uncomfortable if you voted against Mr. Warzycki.

JUROR PEACH: Right.

MS. SHUBIK: Okay. So in other words, although you've said that you would try to be fair and impartial, you really kind of think that you couldn't. Isn't that so?

JUROR PEACH: That's right.

MS. SHUBIK: So you don't think you could be a fair and impartial juror because of your relationship with Mr. Peach.

JUROR PEACH: Right.

MS. SHUBIK: Certainly understandable since he is your son. Thank you very much. Thank you very much for the discussion, for the honesty. I realize sometimes it takes me a moment to write things down, but there's an awful lot of you, and there's only one of me. And that makes it a little bit tough since I have to make some decisions after all of you have talked to me. So I have to write all those things down. Otherwise I could be in trouble. Okay? (tr. 90–92).

\*    \*    \*    \*    \*    \*

MR. WARZYCKI: Mrs. Peach.

JUROR PEACH: Yes.

MR. WARZYCKI: I don't want to put words in your mouth. Okay? Is what you're telling us because George Peach is your son, you could not be a fair juror? Is that what you're really telling us?

JUROR PEACH: No. I said I would be uncomfortable.

MR. WARZYCKI: Okay. There's a lot of people here who are uncomfortable that don't want to be on the jury. Okay. But the question is if you were on the jury here and you listened to the evidence, whether you be uncomfortable or not, if you felt the State didn't prove the case beyond a reasonable doubt, you could still return not guilty.

JUROR PEACH: Yes, I would.

MR. WARZYCKI: Okay. And if you felt the State proved the case beyond a reasonable doubt, would you return a verdict of guilty?

JUROR PEACH: Yes, I would.

MR. WARZYCKI: And, whether you would be uncomfortable or not, you still would be willing to face George with that decision as yours.

JUROR PEACH: Yes. Yes.

MR. WARZYCKI: Okay. Thank you very much. No further. (tr. 138–39).