**Michelle L. BROWN, Appellant,**

v.

**Scott M. COLLINS, Respondent.**

**No. WD 58679.**

Missouri Court of Appeals,
Western District.

June 5, 2001.

Mark E. Parrish, Independence, for appellant.

Jane Ann Landrum, Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., and SMART and HOWARD, JJ.

HOWARD, Judge.

Michelle Brown (Ms. Brown) filed suit against Scott Collins (respondent) for injuries she allegedly suffered as a result of a rear-end collision between Ms. Brown's and respondent's automobiles. At trial, a unanimous jury returned a verdict in favor of respondent. Ms. Brown now appeals, alleging that the trial court erred in refusing to strike two venirepersons for cause, therefore depriving her of her right to a qualified jury of twelve.

We reverse the trial court's judgment and remand for a new trial.

**Factual and Procedural Background**

Ms. Brown sued respondent after she allegedly suffered injuries as a result of a low-speed, rear-end automobile collision. During *voir dire,* Ms. Brown's counsel asked several questions of the jury concerning their biases or prejudices that could have affected their ability to sit as impartial jurors. At one point, Ms. Brown's counsel informed the jury that Ms. Brown's injuries had been treated by a chiropractor. He also informed the jury that Ms. Brown's chiropractor would be testifying by way of videotaped deposition concerning these injuries. Counsel inquired as to whether anyone on the panel had an opinion of chiropractors. Several panel members, including venireperson Clara Washington, voiced negative opinions of chiropractors.

Ms. Brown now complains that Ms. Washington should have been stricken for cause because of her response. Specifically, the very brief dialogue between Ms. Brown's counsel and Ms. Washington regarding her bias or prejudice toward chiropractors follows:

> MR. PARRISH [Ms. Brown's counsel]: Simply because the expert in this case is a chiropractor, you believe that it would affect your ability to be a juror?
>
> MS. WASHINGTON: Yes.
>
> MR. PARRISH: You would have that problem even after hearing the evidence and instructions by the court?
>
> MS. WASHINGTON: Yes.

At this point, neither party's counsel nor the court further inquired about Ms. Washington's potential bias or prejudice. Ms. Washington did not change her answer at any time. After the trial court excused the panel, Ms. Brown's counsel moved to strike Ms. Washington for cause. The exchange between counsel and the court was as follows:

> MR. PARRISH: Judge, second, we have ... Clara Washington. She said that she would be bias[ed] because it is a chiropractor who is the medical provider who will be testifying. She didn't change that opinion at any point.
>
> MS. LANDRUM [respondent's counsel]: I thought that she could set aside her prejudice.
>
> THE COURT: I'm going to turn you down on Ms. Washington. Nobody really nailed her down one way or another. What I've got [is] a notation here, a question mark, that she felt like chiropractic care can be questionable. She

didn't say that she was arbitrarily getting that care, nor could she set it aside. It was left hanging. I'm going to turn you down.

Although the trial court described Ms. Washington's apparent partiality as "left hanging," Ms. Brown points out that the trial court never further questioned, and Ms. Washington never retracted, her statement which raised legitimate doubts as to her qualifications.

## Impartial Jury of Twelve Persons

Ms. Brown's two points on appeal concern venirepersons (and subsequent jurors) Clara Washington and Leigh James. Ms. Brown alleges that Ms. Washington's comment during *voir dire* that her feelings toward chiropractors would impair her ability to be an impartial juror required the trial court to sustain her motion to strike Ms. Washington from the jury panel for cause. She also alleges that Ms. James should have been stricken for cause because she equivocated regarding her ability to serve as an impartial juror.

## Standard of Review

■ Because a large part of the *voir dire* process depends upon the demeanor and credibility of prospective jurors and other intangibles that were observed by the trial court but cannot be observed by this court, we generally grant the trial court broad discretion in determining the qualifications of prospective jurors. *Catlett v. Illinois Cent. Gulf R.R. Co.*, 793 S.W.2d 351, 353 (Mo. banc 1990). Therefore, unless we find that the trial court's refusal to strike a juror for cause deprived Ms. Brown of a fair trial, we will affirm. *Id.*

## Discussion

■ Essential to our jury system is the fact that "[t]he competent juror 'must be in a position to enter the jury box disinterested and with an open mind, free from bias or prejudice.'" *Id.* (quoting *State v. Ealy*, 624 S.W.2d 490, 493 (Mo. App. W.D.1981)). A trial judge's discretion is not endless, and he must "consider the responses of the prospective jurors on *voir dire* in their entirety and make an independent evaluation of their ability to serve impartially" when ruling on a challenge for cause. *Id.* As pointed out by the *Ealy* court, during the *voir dire* process, there exists a pool of potential jurors available for service. It is better for the trial court to err on the side of caution by sustaining a challenge for cause than to create the potential for retrial—" 'an illogical expenditure of the citizenry's time and money' "—by retaining the questionable juror. *Ealy*, 624 S.W.2d at 494 (quoting *State v. Carter*, 544 S.W.2d 334, 338 (Mo. App.1976)). Thus, if Ms. Brown's challenge to excuse Ms. Washington for cause was legitimate, this constitutes reversible error. *Id.* at 493.

■ As previously stated, neither the parties nor the trial court further questioned Ms. Washington after she stated that a chiropractor witness would affect her ability to serve as a juror in Ms. Brown's case. "In the absence of an independent examination after equivocal responses, the appellate court is justified in conducting a more thorough review of the challenged juror's qualifications." *Catlett*, 793 S.W.2d at 353. This is because "[e]ven in a civil trial, where a jury decision need be made by only a three-fourths majority, the civil litigant is still entitled to a jury of twelve impartial persons." *Id.* (citing *Triplett v. St. Louis Pub. Serv. Co.*, 343 S.W.2d 670, 672 (Mo.App.1961), which likewise held that "although a civil case may be decided by the vote of three-fourths of [twelve jury members], a party has the right to have that decision, whether for or

against him, based on the honest deliberations of twelve [impartial persons]").

 Although we grant the trial court great discretion in matters concerning *voir dire,* "[a] failure by the trial judge to question independently a potential juror to 'explore possible prejudice may undercut any basis for the trial judge's exercise of discretion and constitute reversible error.'" *Catlett,* 793 S.W.2d at 353 (quoting *Ealy,* 624 S.W.2d at 493). In fact, the court's "failure to [independently question the juror about his qualifications to serve] makes it difficult or impossible for a reviewing court to judge whether the trial court abused its discretion in refusing to strike the venireperson." *Rodgers v. Jackson County Orthopedics, Inc.,* 904 S.W.2d 385, 388 (Mo.App. W.D.1995) (citing *Ealy,* 624 S.W.2d at 493–94).

The facts of *Catlett* were very similar to those now before this court. *Catlett* involved venireperson Barnes, who initially equivocated regarding her ability to be impartial but eventually stated unequivocally that she could not be impartial. The trial court did not independently inquire into venireperson Barnes' ability to be impartial. *Catlett,* 793 S.W.2d at 353–54. The Missouri Supreme Court held that the trial court committed reversible error when it summarily denied appellant Illinois Central's motion to strike venireperson Barnes for cause, without independently inquiring into her ability to be impartial. *Id.* at 354.

 In this case, the trial court likewise erred in failing to further inquire into Ms. Washington's ability to be impartial or to strike her for cause. In fact, unlike *Catlett,* in which venireperson Barnes first equivocated regarding her ability to be impartial, the record in the case now before us indicates that Ms. Washington clearly indicated she could not be impartial. Yet, the trial court did not further

inquire into her ability to be impartial and did not strike her for cause. Ms. Washington remained on the jury panel and was one of twelve jurors that signed the verdict form finding in favor of respondent. Such error deprived Ms. Brown of her right to an impartial jury of twelve persons, thus requiring reversal for a new trial.

Because we conclude that Ms. Brown's first point on appeal concerning Ms. Washington is dispositive and compels reversal and a new trial, we do not address Ms. Brown's allegation of error concerning Ms. James.

### Conclusion

Despite juror Washington's statement that Ms. Brown's use of a chiropractor witness would affect her ability to sit as an impartial juror, the trial court summarily denied Ms. Brown's motion to strike Ms. Washington for cause and did not independently inquire into Ms. Washington's ability to be an impartial juror. This constitutes reversible error. *Catlett,* 793 S.W.2d at 354. We reverse the trial court's judgment and remand the cause for further proceedings. *Id.*

LAURA DENVIR STITH, P.J., and SMART, J., concur.